NF

**FILED**

NP

NOV 08 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

NOV 0 8 2012

MICHAEL T. MASON
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No.    12 CR 528 |
| | ) | |
| v. | ) | |
| | ) | Violations: Title 18, United States Code, |
| THOMAS HAWKINS and | ) | Sections 371, 666, 1341, 1346, and 1349 |
| JOHN RACASI | ) | |
| | ) | **Superseding Indictment**    JUDGE CONLON |

<u>**COUNT ONE**</u>        MAGISTRATE JUDGE COLE

The SPECIAL JANUARY 2012 GRAND JURY charges:

1.    At times material to this indictment:

A.    Cook County was a local government located in the Northern District of Illinois. The functions and services provided by Cook County on behalf of its residents were coordinated through various entities. One of Cook County's operational entities was the Cook County Board of Review ("Board of Review").

B.    The principal function of the Board of Review was to review appeals of the Cook County Assessor's property tax assessments.

C.    The Board of Review was made up of three commissioners. The commissioners had staff members, including analysts, who provided recommendations to the commissioners regarding the appropriate assessed value of a property for which the assessment had been appealed to the Board of Review.

D.    Defendant THOMAS HAWKINS was employed as an Analyst by the Board of Review on the staff of Commissioner A.

E.    Defendant JOHN RACASI was also employed as an Analyst by the Board of Review on the staff of Commissioner A.

F.      Individual A was an associate of defendants HAWKINS and RACASI, who was not employed at the Board of Review.

G.      Individual B was an individual who, unbeknownst to the defendants, was cooperating with law enforcement.

H.      Individual C was employed by the Board of Review.

2.      Beginning no later than August 10, 2008, and continuing until at least on or about July 20, 2009,

THOMAS HAWKINS and
JOHN RACASI,

defendants herein, conspired and agreed with each other, Individual A, and others known and unknown to the Grand Jury, that defendants HAWKINS and RACASI, being agents of Cook County, which, during a one-year period, beginning August 1, 2008, and continuing to July 31, 2009, received federal benefits in excess of $10,000, would corruptly solicit, demand, accept and agree to accept a thing of value, namely, cash payments, intending to be influenced and rewarded in connection with business and transactions of Cook County involving a thing of value of $5,000 or more, namely property tax reductions, in violation of Title 18, United States Code, Section 666(a)(1)(B).

3.      It was part of the conspiracy that defendants HAWKINS and RACASI and Individual A agreed to identify owners of residential or commercial properties who were willing to appeal their property tax assessment to the Board of Review and to ask the property owners to pay a bribe for any tax assessment reduction obtained.

4.      It was further part of the conspiracy that in or about September 2008, defendants HAWKINS and RACASI told Individual B that they would work to get property tax reductions for properties identified by Individual B in exchange for a cash payment. After Individual B agreed,

defendants HAWKINS and RACASI obtained from Individual B the addresses for three properties for which Individual B was seeking a reduction in the property tax assessment.

5.      It was further part of the conspiracy that defendants HAWKINS and RACASI directed Individual B to submit the standard paperwork for appealing to the Board of Review or facilitated the filing of the paperwork with the Board of Review.

6.      It was further part of the conspiracy that after the standard paperwork for appealing to the Board of Review was submitted, defendants HAWKINS and RACASI stated that they, or others assisting them, obtained the Property Index Number ("PIN") for the property or otherwise identified the file associated with the property within the Board of Review.

7.      It was further part of the conspiracy that defendants HAWKINS and RACASI claimed that they would ensure that at least two of the three commissioners, or their staff, voted in favor of a reduction for the property tax assessment corresponding to the PIN.

8.      It was further part of the conspiracy that defendants HAWKINS and RACASI concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the conspiracy and the acts done in furtherance of the conspiracy.

## OVERT ACTS

9.      In furtherance of the conspiracy and to accomplish the objectives of the conspiracy, defendants HAWKINS and RACASI committed one or more overt acts in the Northern District of Illinois, and elsewhere, which overt acts included but were not limited to the following:

a.      On or about September 11, 2008, defendants HAWKINS and RACASI provided Individual B with Board of Review Analysis/Evidence Sheets for each of the three properties identified by Individual B, showing that the assessed value for each property would be reduced, which would have resulted in property tax reductions.

3

b.     On or about September 16, 2008, defendant RACASI called Individual B and asked that Individual B provide defendant RACASI with the bribe payment that day.

c.     On or about September 16, 2008, defendant HAWKINS called Individual B and asked about the bribe payment and when defendants HAWKINS and RACASI would receive the payment.

d.     On or about September 17, 2008, defendants HAWKINS and RACASI accepted a $1,500 bribe payment from Individual B in exchange for promised property tax assessment reductions on the three properties.

e.     In or about March 2009, defendants HAWKINS and RACASI told Individual B that they, with the assistance of Individual C, would work to obtain property tax assessment reductions for multiple condominium units in a building identified by Individual B.

f.     On or about March 3, 2009, defendant RACASI informed Individual B that he had consulted with Individual C, who works on property tax reductions for condominium buildings at the Board of Review, and confirmed that the appeals for the condominium units could be submitted without the assistance of an attorney.

g.     On or about March 25, 2009, defendants HAWKINS and RACASI obtained from Individual B the PINs for eleven condominium units.

h.     On or about March 25, 2009, defendants HAWKINS and RACASI filled out the 2008 Real Estate Assessed Valuation Complaint ("Complaint") for each unit and signed the name of the unit owner on each Complaint.

i.     On or about March 25, 2009, defendants HAWKINS and RACASI filed the Complaint for each unit with the Board of Review and provided Individual B with copies of the Complaints that had been time-stamped by the Board of Review.

4

j.      On or about May 21, 2009, defendants HAWKINS and RACASI met with Individual B and provided Individual B with a Board of Review Analysis/Evidence Sheet that showed a reduction in the assessed value of one of the original three properties previously identified by Individual B.

k.      On or about July 20, 2009, defendants HAWKINS and RACASI met with Individual B and provided Individual B with a printout from the Board of Appeals Complaint Review System, showing that the assessed value of each of the eleven condominium units had been reduced.

l.      On or about July 20, 2009, defendants HAWKINS and RACASI and Individual B agreed that they would collect a $150 bribe payment from each of the condominium owners that would be divided three ways.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.     The allegations in Paragraph 1 of Count One of this indictment are hereby realleged and incorporated as if fully set forth herein.

2.     From no later than August 10, 2008, continuing to at least July 20, 2009, at Chicago, in the Northern District of Illinois, Eastern Division,

THOMAS HAWKINS and
JOHN RACASI,

defendants herein, being agents of Cook County, which, during a one-year period, beginning August 1, 2008, and continuing to July 31, 2009, received federal benefits in excess of $10,000, corruptly solicited, demanded, accepted and agreed to accept a thing of value, namely, cash payments, intending to be influenced and rewarded in connection with business and transactions of Cook County involving a thing of value of $5,000 or more, namely property tax reductions;

In violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT THREE

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.      The allegations in Paragraph 1 of Count One of this indictment are hereby realleged and incorporated as if fully set forth herein.

2.      At times material to this Count of the indictment, defendants HAWKINS and RACASI had a duty to provide honest services to Cook County, its Board of Review, and its citizens.

3.      Beginning no later than August 10, 2008, and continuing until at least on or about July 20, 2009,

THOMAS HAWKINS and
JOHN RACASI,

defendants herein, together with Individual A and others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, intended to devise, and participated in a scheme to defraud and deprive Cook County, its Board of Review, and its citizens of their right to the honest services of HAWKINS and RACASI through bribery, which scheme is further described below.

4.      It was part of the scheme that defendants HAWKINS and RACASI solicited and accepted cash payments in exchange for promises that HAWKINS and RACASI would ensure that three single-unit residential properties and one multi-unit residential property identified by Individual B would receive property tax assessment reductions. Defendants materially deceived Cook County, its Board of Review, and its citizens by not disclosing the solicitation and receipt of cash bribes in return for their efforts toward property tax assessment reductions.

5.      It was further part of the scheme that in or about September 2008, defendants HAWKINS and RACASI obtained from Individual B the addresses for three properties for which

7

Individual B was seeking a reduction in the property tax assessment.

6.     It was further part of the scheme that defendants HAWKINS and RACASI provided Individual B with Board of Review Analysis/Evidence Sheets for each of the three properties identified by Individual B, which showed that the assessed value for each property would be reduced.

7.     It was further part of the scheme that on or about September 17, 2008, defendants HAWKINS and RACASI accepted a $1,500 bribe payment from Individual B in exchange for the promised property tax reductions on the three properties.

8.     It was further part of the scheme that in or about March 2009, defendants HAWKINS and RACASI told Individual B that they, with the assistance of Individual C, would work to obtain property tax assessment reductions for multiple condominium units in a building identified by Individual B.

9.     It was further part of the scheme that on or about March 25, 2009, defendants HAWKINS and RACASI obtained from Individual B the Property Index Numbers ("PINs") for eleven condominium units, filled out the 2008 Real Estate Assessed Valuation Complaint ("Complaint") for each unit, and signed the name of the unit owner on each Complaint.

10.     It was further part of the scheme that on or about March 25, 2009, defendants HAWKINS and RACASI filed the Complaint for each unit with the Board of Review and provided Individual B with copies of the Complaints that had been time-stamped by the Board of Review.

11.     It was further part of the scheme that on or about May 21, 2009, defendants HAWKINS and RACASI met with Individual B and provided Individual B with a Board of Review Analysis/Evidence Sheet that showed a reduction in the assessed value of one of the original three properties previously identified by Individual B ("Property 1").

12.     It was further part of the scheme that on or about July 20, 2009, defendants

HAWKINS and RACASI met with Individual B and provided Individual B with a printout from the Board of Appeals Complaint Review System, showing that the assessed value of each of the eleven condominium units had been reduced.

13.     It was further part of the scheme that on or about July 20, 2009, defendants HAWKINS and RACASI, and Individual B, agreed that they would collect a $150 bribe payment from each of the condominium owners that would be divided three ways.

14.     It was further part of the scheme that defendants HAWKINS and RACASI concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

15.     On or about June 25, 2009, in the Northern District of Illinois, Eastern Division,

THOMAS HAWKINS and
JOHN RACASI,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be delivered by the United States Postal Service, according to the directions thereon, an envelope addressed to Individual B containing a letter from the Board of Review to Individual B, notifying Individual B of the Board of Review's decision to reduce the assessed value of Property 1;

In violation of Title 18, United States Code, Sections 1341 and 1346.

9

## COUNT FOUR

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.     The allegations in Paragraph 1 of Count One and Paragraph 2 of Count Three of this indictment are hereby realleged and incorporated as if fully set forth herein.

2.     Beginning no later than August 10, 2008, and continuing until at least on or about July 20, 2009,

THOMAS HAWKINS and
JOHN RACASI,

defendants herein, together with Individual A and others known and unknown to the Grand Jury, did conspire and agree with each other to devise and participate in a scheme to deprive Cook County, its Board of Review, and its citizens of their right to the honest services of HAWKINS and RACASI through bribery, and it was foreseeable that for the purposes of executing and attempting to execute such scheme, one or more members of the conspiracy would use and cause the use of the United States mails, in violation of Title 18, United States Code, Sections 1341 and 1346.

3.     It was part of the conspiracy that defendants HAWKINS and RACASI solicited and accepted cash payments in exchange for promises that HAWKINS and RACASI would ensure that three single-unit residential properties and one multi-unit residential property identified by Individual B would receive property tax assessment reductions.  Defendants materially deceived Cook County, its Board of Review, and its citizens by not disclosing the solicitation and receipt of cash bribes in return for their efforts toward property tax assessment reductions.

4.     It was further part of the conspiracy that defendants HAWKINS and RACASI and

10

Individual A agreed to identify owners of residential or commercial properties who were willing to appeal their property tax assessment to the Board of Review and to ask the property owners to pay a bribe for any tax assessment reduction obtained.

5.     It was further part of the conspiracy that in or about September 2008, defendants HAWKINS and RACASI told Individual B that they would work to get property tax reductions for properties identified by Individual B in exchange for a cash payment. After Individual B agreed, defendants HAWKINS and RACASI obtained from Individual B the addresses for three properties for which Individual B was seeking a reduction in the property tax assessment.

6.     It was further part of the conspiracy that defendants HAWKINS and RACASI directed Individual B to submit the standard paperwork for appealing to the Board of Review or facilitated the filing of the paperwork with the Board of Review.

7.     It was further part of the conspiracy that after the standard paperwork for appealing to the Board of Review was submitted, defendants HAWKINS and RACASI stated that they, or others assisting them, obtained the Property Index Number ("PIN") for the property or otherwise identified the file associated with the property within the Board of Review.

8.     It was further part of the conspiracy that defendants HAWKINS and RACASI claimed that they would ensure that at least two of the three commissioners, or their staff, voted in favor of a reduction for the property tax assessment corresponding to the PIN.

9.     It was further part of the conspiracy that defendants HAWKINS and RACASI provided Individual B with Board of Review Analysis/Evidence Sheets for each of the three properties identified by Individual B, which showed that the assessed value for each property would be reduced.

10.     It was further part of the conspiracy that on or about September 17, 2008,

11

defendants HAWKINS and RACASI accepted a $1,500 bribe payment from Individual B in exchange for the promised property tax reductions on the three properties.

11.    It was further part of the conspiracy that in or about March 2009, defendants HAWKINS and RACASI told Individual B that they, with the assistance of Individual C, would work to obtain property tax assessment reductions for multiple condominium units in a building identified by Individual B.

12.    It was further part of the conspiracy that on or about March 25, 2009, defendants HAWKINS and RACASI obtained from Individual B the Property Index Numbers ("PINs") for eleven condominium units, filled out the 2008 Real Estate Assessed Valuation Complaint ("Complaint") for each unit, and signed the name of the unit owner on each Complaint.

13.    It was further part of the conspiracy that on or about March 25, 2009, defendants HAWKINS and RACASI filed the Complaint for each unit with the Board of Review and provided Individual B with copies of the Complaints that had been time-stamped by the Board of Review.

14.    It was further part of the conspiracy that on or about May 21, 2009, defendants HAWKINS and RACASI met with Individual B and provided Individual B with a Board of Review Analysis/Evidence Sheets that showed a reduction in the assessed value of one of the original three properties previously identified by Individual B ("Property 1").

15.    It was further part of the conspiracy that on or about July 20, 2009, defendants HAWKINS and RACASI met with Individual B and provided Individual B with a printout from the Board of Appeals Complaint Review System, showing that the assessed value of each of the eleven condominium units had been reduced.

16.    It was further part of the conspiracy that on or about July 20, 2009, defendants

12

HAWKINS and RACASI, and Individual B, agreed that they would collect a $150 bribe payment from each of the condominium owners that would be divided three ways.

17.     It was further part of the conspiracy that defendants HAWKINS and RACASI concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the conspiracy and the acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

The SPECIAL JANUARY 2012 GRAND JURY further alleges:

1.     The allegations contained in Counts One, Two, Three, and Four of this superseding indictment are realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(D) and Title 28, United States Code, Section 2461(c).

2.     As a result of their violations of Title 18, United States Code, Sections 371, 666(a)(1)(B), 1341, 1346, and 1349 as alleged in the foregoing superseding indictment,

THOMAS HAWKINS and<br>
JOHN RACASI,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(D) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offenses.

3.     The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include but are not limited to all financial benefits and proceeds defendants received related to Counts One, Two, and Three, including, without limitation, $1,500;

4.     If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants:

       (a)     Cannot be located upon the exercise of due diligence;

       (b)     Has been transferred or sold to, or deposited with, a third party;

       (c)     Has been placed beyond the jurisdiction of the Court;

14

(d)     Has been substantially diminished in value; or

(e)     Has been commingled with other property which cannot
        be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions

of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code,

Section 2461(c);

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States

Code, Section 2461(c).


A TRUE BILL:


_____

FOREPERSON


_____
ACTING UNITED STATES ATTORNEY