UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>) |
| Plaintiff, | )  No. 12 CR 528<br>)  Judge John J. Tharp, Jr. |
| v. | ) |
| THOMAS HAWKINS and<br>JOHN RACASI, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

The defendants move to dismiss the superseding indictment on several grounds. Their principal arguments are variations on the same central theme: they claim that the indictment fails to adequately allege that they agreed to provide a *quid pro quo* in exchange for bribery payments they received and solicited. That argument does not bear even cursory scrutiny and the defendants' other arguments are no stronger. Their motion to dismiss the indictment is therefore denied.

Taking the facts as alleged, which the Court must do on a motion to dismiss the indictment, the defendants work for the Cook County Board of Review, which reviews appeals of property tax assessments by the Cook County Assessor. There are three Commissioners on the Board, each of whom has staff members, including analysts, who assist in reviewing appeals and making recommendations to the Commissioner about how to vote on the appeals that come before the Board. During the period at issue—August 2008 through July 2009—the defendants were analysts on the staff of Commissioner A.

The indictment alleges that the defendants worked together to exploit their positions to obtain bribes in exchange for influencing the appeals process to produce favorable outcomes for

property owners appealing their assessments. It describes two schemes in particular, both of which also involved Individual B, who was working for the government at the time as a confidential source.[1] In the first of the schemes ("Scheme 1"), the defendants worked to obtain reductions in property tax assessments of three separate residential properties; the other scheme ("Scheme 2") related to a group of 11 condominium units located within a single building.

In Scheme 1, the indictment alleges that Individual B identified the three properties for which he was seeking property tax assessment reductions and that the defendants claimed that they would ensure that at least two of the three commissioners on the Board voted in favor of reducing the property tax assessments on those properties. The defendants later provided Individual B with Board of Review Analysis/Evidence sheets for each of the properties, showing that the assessments had been reduced. On September 16, 2008, the indictment alleges, each of the defendants separately called Individual B to tell him that they needed to receive their payment and, the next day, Individual B paid a $1500 bribe to the defendants for their assistance in reducing the assessments on the three properties.

Scheme 2 took place in 2009. After Individual B provided a list of the 11 condominium units, the indictment alleges that the defendants told Individual B that they would work to obtain reductions of the tax assessments on the properties with the assistance of another Board of Review employee, Individual C. The defendants completed and filed the paperwork necessary to appeal the assessments on these properties (and signed the names of the property owners) and, two months later, they showed Individual B documentation of the reduction in the assessment on each of the units. The defendants then agreed with each other and with Individual B that they

---

[1] The defendants represent, and the Court accepts as true for purposes of this motion, that Individual B "is a Chicago Police Officer arrested in an investigation of public corruption and gun trafficking, who is cooperating in hopes of a recommendation for a reduced sentence in connection with expected forthcoming charges."

2

would collect a $150 bribe payment from each of the property owners, which they would split three ways.

In Counts One and Two of the superseding indictment, the defendants are charged with conspiring to receive, and receiving, bribes in violation of 18 U.S.C. § 371 (Count One) and § 666(a)(1)(B) (Count Two). The defendants argue that these counts are deficient because the government does not explicitly allege a *quid pro quo*—*i.e.*, that they actually took a specific action in exchange for the payment from Individual B. Rather, the counts allege only that the defendants "claimed" that they would secure the requested reductions in the assessments of those properties. In advancing this argument, the defendants ignore controlling Circuit precedent holding that there is no *quid pro quo* requirement for conviction under § 666(a)(1)(B). *See United States v. Gee*, 432 F.3d 713, 714 (7th Cir. 2005) (a *quid pro quo* is sufficient but not necessary to violate § 666(a)(1)(B)); *United States v. Boender*, 649 F.3d 650, 654 (7th Cir. 2011) (citing *Gee* in noting that "it is clear that our circuit, like most others, does not require a specific *quid pro quo*").[2] The indictment alleges that the defendants corruptly received and agreed to receive cash from Individual B and/or the owners of the condo units with the intent to be influenced or rewarded in connection with County business, namely property tax assessments, and that is all that the statute requires. The indictment tracks the statutory language and elements,

---

[2] In their reply, the defendants maintain that *Gee* and *Boender* are distinguishable because the defendants in those cases were convicted of *offering* bribes whereas here the defendants are charged with *receiving* bribes. That claim is not correct. In *Gee*, the defendant was convicted not of offering a bribe but of conspiring to violate § 666(a)(1)(B), the same statute the defendants are charged with violating. *Boender* was a case under § 666(a)(2), but there the Court merely observed that its holding that there was no *quid pro quo* requirement for offering a bribe is consistent with this Circuit's view that there is no *quid pro quo* requirement in the "parallel provision" of § 666(a)(1)(B) for receiving a bribe. In neither case did the Seventh Circuit remotely suggest that the distinction between offering a bribe and receiving one has any relevance to the question of whether there is a *quid pro quo* requirement in either provision of the bribery statute.

3

and is therefore sufficient. *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). In claiming that they would influence the outcome of the appeals of the assessments of these properties (or so the indictment alleges), the defendants corruptly agreed to receive bribes with the intent of being rewarded for having done so, whether or not they actually did anything to bring about a more favorable assessment.

Counsel for the defendants compound their error in failing to cite *Gee* and/or *Boender* in their opening brief by badly mischaracterizing the Seventh Circuit's opinions in *United States v. Medley*, 913 F.2d 1248 (7th Cir. 1990) and *United States v. Agostino*, 132 F.3d 1183 (7th Cir. 1997). The defendants characterize *Medley* as holding that a *quid pro quo* is an element of a § 666(a)(1)(B) charge and maintain that the Circuit Court confirmed that fact in *Agostino* even while declining to similarly construe § 666(a)(2). In *Medley*, however, the Court did not address the substance of the *quid pro quo* issue and, if anything, its holding supports a contrary view in that the court affirmed jury instructions that did not even advise the jury that the actions had to be done "corruptly." The court's statement that "the essential element of a section 666 violation is a 'quid pro quo'," 913 F.2d at 1260, was dicta and, as the *Agostino* court subsequently pointed out, "[i]t is clear from the context that the *Medley* court was not positing an additional element to the statutory definition of the crime, but instead was explaining the *sine qua non* of a violation of § 666. The elements of the offense remain those that are set forth in the statutory language." 132 F.3d at 1190.

The defendants' challenge to Counts Three and Four of the indictment is no stronger. They correctly note that the Supreme Court held in *Skilling v. United States*, 130 S. Ct. 2896 (2010), that honest services fraud under the mail and wire fraud statutes is limited to frauds involving bribes or kickbacks. But that fact is of no moment for these defendants, because

Counts Three and Four expressly allege that the defendants "devised, intended to devise, and participated in a scheme to defraud and deprive Cook County, its Board of Review, and its citizens of their right to the honest services of Hawkins and Racasi *through bribery*." See Count Three, ¶ 3; Count Four, ¶ 2 (emphasis added). In view of the indictment's express allegations of bribery in these counts, the defendants' invocation of *Skilling* is utterly unavailing.

Finally, the defendants argue that the indictment should be dismissed due to "outrageous government conduct." In advancing this argument, defense counsel again ignore controlling Seventh Circuit precedent holding that this defense "does not exist in this circuit." *United States v. Boyd*, 55 F.3d 239, 241 (7th Cir. 1995). Even if it did, the circumstances about which the defendants complain are not in the least "outrageous." The defendants maintain that the government failed to apprise the grand jury that defendant Hawkins was a drug addict and that Individual B, who was a cooperating Chicago police officer, could have arrested him if he refused to participate in the bribery scheme.[3] As the government points out, however, there is no right to the presentation of exculpatory evidence in the grand jury, *see United States v. Mahalick*, 498 F.3d 475, 479-480 (7th Cir. 2007), so failing to do so does not remotely smack of outrageous misconduct. It is also difficult to credit the hypothesis that the defendant was prejudiced by the government's failure to tell the jury that he was a drug addict who was susceptible to arrest at virtually any moment because he always had illegal drugs in his possession. Indeed, the prejudice argument might be stronger (it could not be weaker) had the government presented *that* information to the grand jury; it is not difficult to imagine in that case the defendant claiming that the government tried to poison the well with other crimes evidence that has nothing to do with the charges the grand jury actually returned.

---

[3] Even if this assertion presented a viable defense, it is not clear why defendant Racasi would be entitled to assert it, as the alleged misconduct did not relate to him.

In closing, the Court notes that it finds defense counsel's arguments in this motion to be frivolous. Counsels' failure to cite and discuss controlling precedent from the Seventh Circuit is particularly troubling; the Court is at a loss as to how counsel could file a motion asserting, in good faith, that *Medley* holds that there is *a quid pro quo requirement* in a § 666(a)(1)(B) charge in view of the clear statements the Seventh Circuit has made on that issue in *Agostino*, *Gee*, and *Boender*. The Court recognizes that defense counsel have an obligation to consider any colorable argument on behalf of their clients, but there is no obligation to advance arguments that are plainly foreclosed by circuit precedent. On occasion, zealous advocacy may obscure the precise boundaries of permissible argument, but in this motion the arguments presented lie well outside those boundaries. In filing this motion, counsel have needlessly required both the Government and the Court to expend resources addressing arguments that should never have been made. Counsel are cautioned to pay more heed to the boundaries between colorable and frivolous arguments in the future.

The defendants' motion to dismiss the superseding indictment is denied.

ENTER: March 12, 2013

John J. Tharp, Jr.
United States District Judge