**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 CR 00528 |
| | ) | |
| THOMAS HAWKINS and JOHN RACASI, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

After a jury trial the defendants were convicted on all four counts of the superseding indictment charging: (1) conspiracy to commit bribery under 18 U.S.C. § 371; (2) bribery under 18 U.S.C. § 666(a)(1)(B); (3) theft of honest services through bribery under 18 U.S.C. §§ 1342 & 1346; and (4) conspiracy to commit theft of honest services through bribery under 18 U.S.C. § 1349. The jury found that Hawkins and Racasi, employees of the Cook County Board of Review, accepted or agreed to accept cash payments, including a $1500 payment, with the expectation that they would cause the assessed value of certain Cook County properties to be reduced, thereby lowering the property taxes. The two sets of properties about which the jury heard evidence—a set of three residences and a set of 11 condominiums—were brought to the defendants' attention by Ali Haleem, an informant working with the FBI. Numerous conversations about the assessments of these properties, and efforts to identify other properties that could be reassessed for further payments, were captured on audio and video recordings that (along with Haleem's testimony) made up the bulk of the evidence against the defendants.

The defendants now move for judgment of acquittal, or alternatively, for a new trial, on several grounds. *See* Fed. R. Civ. P. 29(c), 33. Judgment of acquittal should not be granted if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *United States v. Philpot*, 733 F.3d 734, 743 (7th Cir. 2013). A new trial should be granted only if the verdict is so contrary to the weight of the evidence that the interests of justice require a new trial. *United States v. Molton*, 743 F.3d 479, 483 n.1 (7th Cir. 2014); *see* Fed R. Cr. P. 33(a) (Court may grant a new trial "if the interest of justice so requires").

Each of the defendants' arguments turns on what is required to prove bribery.[1] As relevant here, so-called "federal program bribery" prohibits agents of federally funded entities from "corruptly" accepting or agreeing to accept "anything of value ... intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of [the federally funded] organization, government, or agency." 18 U.S.C. § 666(a)(1)(B); *see United States v. Owens*, 697 F.3d 657, 658-59 (7th Cir. 2012).

The defendants' principal contention is that the defendants were not guilty of bribery because they were "all talk and no action." They maintain that they never actually intended to do anything to lower anyone's property taxes, so they cannot be guilty of bribery. Each of their

---

[1] The defendants do not parse out their arguments in a count-by-count manner; their arguments can be understood to apply to all counts. The government similarly accedes that "each count essentially comes down to whether the defendants engaged in bribery." Although the defendants were also convicted of honest services fraud, that crime is committed only when a defendant, through bribery, engages in "a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346; *see Skilling v. United States*, 561 U.S. 358, 130 S. Ct. 2896, 2932–33 (2010). Thus, the convictions on counts 3 and 4 of the superseding indictment also depend on what is required to prove bribery and the defendants' arguments apply equally to those counts.

arguments presents a variation on this theme and each turns on what it means to act "corruptly" within the meaning of the statute.

As the Seventh Circuit explained in *United States v. Peleti,* 576 F.3d 377, 383 (7th Cir. 2009), a public official "can act corruptly without intending to be influenced" by payment of the bribe. What is required to make the act corrupt is not an intent to take a specific action, but the holding out of the performance of the duties of one's office for sale. Thus, an official acts corruptly if he solicits or receives the bribe payment "on the representation that the money is for the purpose of influencing his performance of some official act." *Id.* (quoting *United States v. Arroyo,* 581 F.2d 649, 652 (7th Cir. 1978)). In *Peleti*, then, the Court of Appeals affirmed the district court's denial of the defendant's motion to withdraw his guilty plea where he had admitted that he accepted a payment knowing that it had been given to him for the purpose of influencing his official actions—even though he had explicitly told the bribe payer that "there was no way" the contract at issue could be awarded to him. *Id*. at 383.

*Peleti* involved the federal bribery statute, 18 U.S.C. § 201, rather than the federal program bribery statute, 18 U.S.C. § 666, but in this regard the Court sees no basis to distinguish its rationale. That the official holding out his office is an official of an entity funded with federal funds rather than an official employed by the federal government does not mitigate the corrupt nature of the transaction. As the Court adverted before trial (*see* 9/23/13 Pretrial Tr. at 4-6), there is a distinction between the definitions of the bribery offense in the two statutes. In § 201, the official must accept payment "in return for being influenced in the performance of any official act," while § 666(a)(1)(B) requires that the official accept it "intending to be influenced or rewarded." But that just goes to show that "corruptly" does *not* mean "intending to be influenced or rewarded"; if it did, the corrupt acceptance of a payment intending to be influenced or

rewarded would be redundant. Section 666(a)(1)(B) "was designed to extend federal bribery prohibitions to bribes offered to state and local officials employed by agencies receiving federal funds," *Salinas v. United States*, 522 U.S. 52, 58 (1997), so there is little reason to believe that Congress intended a different meaning for the term in § 666(a)(1)(B). Both statutes require, in essence, that the official know that the payment is offered as a bribe. *See United States v. Curescu*, 674 F.3d 735, 742 (7th Cir. 2012) ("§ 666(a)(1)(B) requires knowing that the money or other thing of value received was indeed a bribe, which is to say an inducement to do a corrupt act."); *Peleti,* 576 at 382 (one acts corruptly when one solicits or receives money "on the representation that the money is for the purpose of influencing his performance of some official act"). Whether one accepts the payment "in return for being influenced" or "intending to be influenced or rewarded" may distinguish § 201 bribery from § 666 bribery,[2] but the crimes are not distinguished by the meaning of "corruptly."

With this understanding, the defendants' arguments in this case are easily dispatched, starting first with the defendant's objection to the definition of "corruptly" set forth in the jury instructions. Consistent with the discussion above, the Court defined "corruptly" for the jury as that term is defined in the Seventh Circuit pattern instructions for the elements of § 666(a)(1)(B) bribery: "A person acts corruptly when that person acts with the understanding that something of value is to be offered or given to reward or influence him in connection with his official duties." *See* 7th Cir. Pattern Jury Instr. Cr. at 252-53 (2012)). The defendants maintain that this instruction was defective because it allowed the jury to convict "if the defendants accepted money ('were rewarded') in connection with <u>the subject of</u> their official duties, namely Cook County property taxes, without regard to whether they intended to act corruptly, meaning

---

[2] The distinction is relevant, for example, to the question of whether the statute requires a *quid pro quo*. *See infra* at 9-10.

4

wrongfully, with respect to those taxes." The defendants proposed instead two alternate instructions, each of which involved the statement that a person acts "corruptly" if he "acts with the purpose of wrongfully influencing the business or transactions of" the government agency. If this definition of "corruptly" were correct, the contention that the defendants were "all talk, no action"—that is, that they did not intend to do anything in exchange for the payments—would have been consistent with the jury instructions.

But the defendants' definition of "corruptly" is not correct. As explained above, a transaction can be corrupt even if the defendant does not intend to take any specific action (other than accepting the payment); what matters in that regard is not the action taken by the defendant, but the defendant's knowledge that the payment was offered as a bribe. By focusing on whether the defendants took action after receipt of the bribe, the defendants' proposed instructions misconstrue the relevant inquiry. As *Peleti* explained, promises given to those who one understands to be offering bribes are no less corrupt because the promises are false. 576 F.3d at 382. As long as the defendants knew the purpose of the payment—an inducement or reward for an official act—they acted "corruptly" in accepting the payment, whether or not they intended to do anything to further the bribe payer's interest. The pattern instruction reflects this; the instructions proposed by the defendants did not.[3] Accordingly, the Court rejected the defendants'

---

[3] The Court recognizes that the Second Circuit has said that the Seventh Circuit's pattern instruction is based upon a "misreading" of its case, *United States v. Bonito*, 57 F.3d 167, 171 (2d Cir. 1995). *United States v. Ford*, 435 F.3d 204, 212 n.4 (2d Cir. 2006). The Court respectfully disagrees with that assessment of this Circuit's pattern instruction, which was "derived" from *Bonito*, but also modified *Bonito*'s definition to make clear that it applied to the understanding of both the recipient and the payer of the bribe. Moreover, the Second Circuit's statement in *Ford* that "a jury should be clearly instructed that it is the recipient's intent to make good on the bargain, not simply her awareness of the donor's intent, that is essential," 435 F.3d 204, 212 (2d Cir. 2006), is inconsistent with this Circuit's holdings in *Arroyo* and *Peleti*.

proposed instructions when presented before and during trial,[4] and concludes here that no relief is required on that basis. *See Philpot*, 733 F.3d at 747 (a new trial should be granted based upon defective jury instructions if the instructions as a whole "misled the jury as to the law"); *United States v. Irorere*, 228 F.3d 816, 825 (7th Cir. 2000) (a defendant is entitled to an instruction on his theory of the defendant if it is "supported by law" and "has some foundation in the evidence, however tenuous").

Furthermore, to the extent that the defendants argue that the definition of "corruptly" allowed their convictions without proof of the requisite intent, they read the pattern instruction too narrowly. The jury was instructed as part of the elements of the offense that the culpable intent was "intent to be influenced or rewarded." The defendants do not explain how the challenged definition of "corruptly" could have vitiated the intent clearly required as an element of the offense, and which the jury found to be satisfied based upon the evidence at trial. The instruction as a whole could not have misled the jury as to requisite level of intent.

That brings us to the defendants' contention that the evidence was insufficient to support their convictions because the government did not prove that they actually did anything to cause anyone's property taxes to be lowered. They argue that the evidence against them was insufficient because the government "did not introduce proof that the defendants affected the processing of [applications for tax deductions] or the decision of the Board of Review on the taxes." Rather, the defendants contend that reductions of the assessments for the properties at issue were appropriate. They point to evidence that showed that the Board's system favored reductions wherever they could be justified with reference to comparable properties, as these were, and to the absence of evidence that any property received a reduction that was improper or

---

[4] In particular, see Pretrial Conf. Trs. 9/23/2013 at 5-6 & 10/15/2013 at 1; and Trial Tr. 10/24/2014 (a.m. draft) at 10.

unlawful. They also argue that the votes of at least two separate commissioners—Hawkins and Racasi worked for the same one—were needed to approve a reduction, so they could not have caused the reduction in any event. Because no evidence was presented that the defendants did anything to lower anyone's taxes to an improper level, they argue that the jury lacked any evidence from which it could reasonably infer that the defendants intended to "corruptly" affect any property taxes.

But, as *Peleti* teaches, it was not necessary to prove that the defendants took any specific action to make their transactions with Haleem "corrupt." Thus, as the jury instructions stated, the defendant could be found guilty regardless whether they "had the power to or did perform the act for which [they were] promised or which [they] agreed to receive something of value." *See* 7th Cir. Pattern Jury Instr. Cr. at 179146 (2012). Accepting or agreeing to accept a payment for the performance of official government duties is bribery, whether or not the recipient ultimately "earns" the bribe by taking official action; "acceptance of the bribe is the violation of the statute, not performance of the illegal promise." *United States v. Brewster*, 408 U.S. 501, 526 (1972) (§ 201 bribery). Nor does it matter that the defendants did not have the ability, individually or jointly, to secure the property tax reductions; since no action is required, ability is not necessary. In any event, and as discussed further below, these defendants plainly had the ability to initiate and influence the process (and did so); the jury's verdict cannot be impeached on the basis that lack of ability shows lack of intent. *See United States v. Gee*, 432 U.S. F.3d 713, 715 (7th Cir. 2005) (defendant's argument "confuses influence with power to act unilaterally").

Moreover, it does not matter that the taxes on the subject properties were not reduced to levels that were improper or unjustified. The statute does not require the government "business, transaction, or series of transactions" that are the subject of the bribe to be corrupt; it is no less a

bribe to secure an action that the official would have taken anyway. *Cf. United States v. Shields*, 999 F.2d 1090, 1096 (7th Cir. 1993) (explaining, in case construing the Hobbs Act, that it is no defense to taking a bribe to fix a case that a judgment was compelled or supported by law). The *result* of a bribery transaction does not have to be unlawful; it is the corrupt *means* through which that result was obtained or rewarded that is problematic under the law.

And in this case there is no question from the evidence, particularly the recorded conversations among the defendants and Haleem, that the purpose of the $1500 payment was to obtain property tax reductions. The defendants could not have been mistaken about that. Indeed, they specifically argued that they accepted the money knowing exactly what it was for. In addition, this was not, as the defendants describe it, a case of "all talk, no action." There was plenty of talk, to be sure, but there was also ample evidence that the adjustment of the tax assessments was initiated by the defendants. For example, Board of Review records showed that defendant Racasi was the first reviewer on the file for the house in Burbank that was among the residential properties for which the defendants accepted the $1500 payment. There was a recording of a meeting at which the defendants themselves filled out the paperwork for the condominiums, even though neither of them had responsibility for such properties. When the assessed values of the two sets of properties were in fact reduced, the defendants showed Haleem the Board's internal documentation, inviting his inference (if not suggesting outright) that they had procured the reductions. The evidence was therefore sufficient to enable a jury to conclude, beyond a reasonable doubt, that the defendants acted corruptly—that is, that they knew the payments were made and offered as bribes—and that they accepted those bribes intending to be influenced or rewarded in connection with the performance of their duties at the Board of Review.

As their third variation on the "all talk, no action" theme, the defendants reprise their argument that bribery under § 666 must entail a *quid pro quo*. The Court rejected this argument (as frivolous) in a written opinion denying the defendants' motion to dismiss the superseding indictment (Mem. Op., Dkt. # 62 (Mar. 12, 2013)) because binding Seventh Circuit authority holds that proof of a *quid pro quo* is sufficient, but not necessary, to show a violation of § 666(a)(1)(B). *See United States v. Boender*, 649 F.3d 650, 654 (7th Cir. 2011); *United States v. Gee*, 432 F.3d 713, 714 (7th Cir. 2004). In reasserting this argument, the defendants claim that it should be revisited because "the government has taken the position in this case that the bribery standard for 18 U.S.C. § 201 applies to the charges under § 1346," and since § 201 has a *quid pro quo* requirement, so must § 666(a)(1)(B). The defendants do not, of course, explain why a position that the government has taken in this case has the effect of overturning binding Circuit precedent.[5] Moreover, as the Seventh Circuit observed in *Boender*, "while parallel in some respects," sections 201 and 666 differ in others—and this is one of them.[6] This argument does

---

[5] In holding in *Skilling* that honest services fraud is committed only when a defendant, through bribery, engages in "a scheme or artifice to deprive another of the intangible right of honest services," the Supreme Court did not specifically define "bribery." *See Skilling*, 561 U.S. at, 130 S. Ct. at 2932–33. During trial, seeking to ensure *Peleti*'s applicability, the Government argued that for purposes of defining honest services fraud, bribery should be defined consistently with § 201 rather than § 666(a)(1)(B). *See* 9/23/13 Pretrial Tr. at 9-13. The Court rejected that argument because the bribery at issue in this case is bribery of local officials, not federal officials; it would only confuse a jury to define bribery one way for purposes of the § 666 bribery and bribery conspiracy charges, and another way, for purposes of the honest services fraud and conspiracy charges. Moreover, in *Skilling* the Court pointed to the federal program bribery statute as one of the sources of bribery law that would shape the contours of the prohibition on bribes and kickbacks in § 1346. *Id.* at 2933. *See also United States v. Boone*, 628 F.3d 927, 929 (7th Cir. 2010) (holding that the allegations of bribery in 666(a)(1)(B) case "involved the type of bribery conduct that the Court preserved in *Skilling*, and which constitutes criminal conduct under § 1346").

[6] As noted above, in regard to the meaning of "corruptly," the Court sees no basis to distinguish the two statutes; both statutes require the recipient of a bribe to act with corrupt intent. As the Seventh Circuit explained in *Boender*, however, the differing language used by the

not, therefore, alter the Court's earlier analysis in rejecting the defendants' *quid pro quo* argument.

Finally, the defendants wish to preserve their argument, premised on *United States v. Fernandez*, 722 F.3d 1, 26 (1st Cir. 2013) that "gratuities" are not criminalized under § 666. They preserve the argument in the event that the bribery conviction could not be sustained based on their acceptance of the $1500 payment—for example, if the Court agreed that they lacked the requisite intent with respect to that payment. In that case, they wish to ensure the conviction could not be alternatively sustained, based upon two cash payments of $15 from Haleem. The defendants have preserved the argument, but the Court need not address it further because the bribery conviction is supported by their acceptance of the $1500 payment, whether or not they intended to actually perform, or successfully did perform, any official act.

\* \* \* \* \*

For the foregoing reasons, the Court denies the defendants' motion for acquittal and a new trial.

Date: April 9, 2014

John J. Tharp, Jr.
United States District Judge

---

two statutes in regard to whether a payment is a bribe or a gratuity accounts for the distinction as to whether an express *quid pro quo* is required. *See* 649 F.3d at 655.